UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA CREACH,

    Plaintiff,

v.                                            CASE NO. 3:18-cv-1253-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on September 27, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from December 31, 2013, the alleged disability onset date, through October 25, 2017, the date of the ALJ's decision.[2] (Tr. 10-26, 144-80.)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: lumbar disc disease, cervical disc disease, disorders of the shoulder, migraine headaches, chronic obstructive pulmonary disease ("COPD"),

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14.)

[2] Plaintiff had to establish disability on or before December 31, 2018, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 10.)

hypertension, gastroesophageal reflux disease, hepatitis A, diabetes mellitus, bipolar disorder, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). (Tr. 12.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 15.) Then, at step four of the sequential evaluation process,[3] the ALJ determined that Plaintiff was capable of performing her past relevant work as a cigar packer machine operator and a cigar inspector. (Tr. 25.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from December 31, 2013 through October 25, 2017. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

Plaintiff raises three issues on appeal. First, she argues that the ALJ's RFC assessment was tainted by his erroneous assumption that Plaintiff's treating neurologist, Erin G. Doty, M.D., stated in March of 2014 that Plaintiff could return to full-time work. Next, Plaintiff argues that the ALJ failed to articulate good cause for assigning only little weight to Plaintiff's physical medicine physician, Robert G. Savarese, D.O. Finally, Plaintiff contends that the Appeals Council erred in failing to remand this matter for consideration of 100 pages of treating progress notes from Jacksonville Orthopedic Institute, containing records from March 2015 through September 2017, including a cervical spine MRI dated September 7, 2017. Defendant responds that substantial evidence supports the

3

ALJ's RFC assessment and his evaluation of the medical opinions of record, and that this Court should not disturb the Appeals Council's decision as to the newly submitted evidence.

Starting with the third issue, a claimant is generally allowed to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence[,] and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (internal citation omitted). Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. Evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (quotations omitted). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Here, the ALJ held a hearing on September 27, 2017 and issued his decision on October 25, 2017. (Tr. 10-26, 144-80.) On February 22, 2018, while this matter was on appeal to the Appeals Council, Plaintiff's new attorney,[4]

---

[4] Plaintiff was previously represented by Heather Mayer and Thomas Klint. (*See* Tr. 10, 144.)

Chantal Harrington, submitted one hundred pages of additional evidence. (Tr. 43-143.) This "new and material evidence" included progress notes from Jacksonville Orthopedic Institute for the period October 21, 2015 to September 28, 2017, including a cervical spine MRI performed on September 7, 2017. (Tr. 43.) Ms. Harrington's letter explained that there was "good cause for not submitting these records prior to the ALJ's denial" because:

> Prior counsel was not aware that the records existed in time to obtain copies of the record and submit them prior to the five[-]business[-]day requirement. Additionally, as to the September 7, 2017 cervical MRI, Ms. Creach did not receive the results of the MRI until September 28, 2017 which was after the hearing. At the time of the hearing, Ms. Creach was not aware of the cervical spine MRI results. The recent MRI results corroborated the severity of her neck pain/back pain she described to the ALJ at the hearing. Therefore, she had good cause for not submitting the cervical MRI results to the ALJ prior to five business days before the hearing.

(*Id.*)

On August 31, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's October 25, 2017 decision. (Tr. 1-5.) As to the additional evidence submitted on February 22, 2018, the Appeals Council stated as follows:

> You submitted medical records from Jacksonville Orthopedic Institute dated March 25, 2015 through September 28, 2017 (101 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

(Tr. 2.)

The Court finds that the evidence submitted to the Appeals Council on February 22, 2018 is chronologically relevant because it relates to the period on

5

or before the date of the ALJ's October 25, 2017 decision.  Further, a good portion of this evidence is new, including the treatment records from October 21, 2015, December 10, 2015, January 19, 2016, February 2, 2016, February 18, 2016, March 30, 2016, June 24, 2016, July 14, 2016, August 10, 2017, August 24, 2017, September 5, 2017, and September 28, 2017, and the diagnostic studies from June and October of 2015,[5] and the September 7, 2017 MRI of the cervical spine.  (*See* Tr. 44, 47, 50, 53, 57, 61, 66, 70, 74, 78, 83, 87, 116, 138, 140.)

The Court finds that this new and non-cumulative evidence is material because there is a reasonable possibility that it would have materially affected the administrative decision.  Even assuming that the ALJ had access to the findings of the June 10, 2015 MRI of the lumbar spine, he did not have the benefit of reviewing the findings of the September 7, 2017 MRI of the cervical spine, which showed, *inter alia*:

> FINDINGS: . . .  Multilevel degenerative disc disease and facet hypertrophy are seen.  . . .
>
> C5-6: Spondylosis causing left-sided neural foraminal stenosis.
>
> C6-7: Spondylosis causing mild left foraminal stenosis, shallow central disc protrusion indents the thecal sac.
>
> C7-T1: Spondylosis causing severe right foraminal stenosis.
>
> IMPRESSION:

---

[5] Interestingly, the ALJ's decision cited to some of the findings of the June 10, 2015 MRI of the lumbar spine, even though it does not appear that the full MRI report was in the record before the ALJ.  (*See* Tr. 17, 138.)

C7-T1 spondylosis causing severe right foraminal stenosis.

C5-6 spondylosis causing moderate left foraminal stenosis.

The above findings are unchanged.

C6-7 shallow central disc protrusion/disc osteophyte complex indents the thecal sac. This is somewhat diminished in size compared to the prior examination.

(Tr. 140-41.)

Defendant contends that the September 7, 2017 MRI of the cervical spine "does not show significant changes that would undermine the ALJ's decision." (Doc. 18 at 14-15.) However, the earlier MRI of the cervical spine from August 8, 2013 showed, in relevant part:

C3-4: Minimal generalized broad based dorsal disc bulge without spinal canal stenosis or neuroforaminal narrowing.

C4-5: Very minimal broad based dorsal disc bulge without spinal canal stenosis or neuroforaminal narrowing.

C5-6: Broad based dorsal bulge with effacement of the ventral CSF space. Minimal left neuroforaminal narrowing is seen.

C6-7: Broad based dorsal disc protrusion and effacement of ventral CSF space and slight flattening of the ventral aspect of the cervical spinal cord is noted. Minimal left neuroforaminal narrowing.

C7-T1: Moderate to severe disc space narrowing with dorsal disc bulge and probably some uncinate process hypertrophy and lateral osteophyte complex. There is severe neuroforaminal narrowing bilaterally. Effacement of the ventral CSF space is noted.
. . .
CONCLUSION:

1. Degenerative disc disease at multiple levels as described above most significantly seen at the C7-T1 level with moderate to severe disc space narrowing and dorsal disc bulge and osteophyte complex with severe bilateral neuroforaminal narrowing. Also noted is broad based dorsal protrusion at C6-7 and effacement of the ventral CSF space with mild left neuroforaminal narrowing. C5-6 dorsal disc bulge with effacement of the ventral CSF space and mild left neuroforaminal narrowing is also seen.

2. See above for additional details.

(Tr. 135-36.)

In light of these findings, which do not seem identical to the results of the September 7, 2017 MRI of the cervical spine, and considering the newly submitted treatment records from Jacksonville Orthopedic Institute, the Court is not prepared to conclude that there is no reasonable possibility that this evidence would have materially affected the administrative decision. Specifically, the new and non-cumulative evidence indicates that Plaintiff underwent additional non-conservative treatment in the form of cervical epidural steroid injections under fluoroscopic guidance, cervical trigger point injections, lumbar disc block epidural steroid injections under fluoroscopic guidance, and lumbar transforaminal epidural steroid injections under fluoroscopic guidance (*see* Tr. 48-49, 51, 55, 57, 59, 72-73, 76, 81, 85-86), undermining the ALJ's statement that Plaintiff has been treated conservatively. (*Compare* Tr. 20-21 (noting conservative treatment) *with* Tr. 55 ("The patient has tried and failed conservative treatment options . . . ."); Tr. 57 ("Dr. Keller talked to her about doing a fusion at some point. She seems to have gotten some relief with the disc block and we decided to move

8

forward with another one today."); Tr. 65 ("The patient has tried and failed conservative treatment options thus far including NSAIDs, neuropathic medications and a home exercise program."); Tr. 66 ("Dr. Keller did offer her surgery for the lumbar spine, but she cannot have surgery right now."); Tr. 74 ("She has tried and failed conservative treatment options including medications and physician directed physical therapy."); and Tr. 87 ("The patient is considering surgery on her lumbar spine.").)

In addition, the new and non-cumulative evidence includes at least nine treatment notes from Dr. Savarese (and additional notes from other providers at Jacksonville Orthopedic Institute) for the period October 21, 2015 to September 5, 2017. This is significant because the ALJ cited the lack of "contemporary treatment notes" as a reason for according little weight to Dr. Savarese's opinion. (Tr. 21.) Further, in discounting Dr. Savarese's opinion, the ALJ stated that "more recent physical examinations show the claimant's gait is normal and her strength is intact." (*Id.*) However, the newly submitted treatment notes from Jacksonville Orthopedic Institute, which were not available to the ALJ, reflect some positive examination findings, such as tenderness on palpation in the cervical and lumbar spine, decreased active range of motion of the cervical and lumbar spine, positive impingement signs in the right shoulder, and tenderness over the Achilles. (*See* Tr. 45-46, 48, 54, 58, 64, 72, 76, 80-81, 85, 89.)

Although the Court cannot speculate what weight the ALJ may assign to this evidence, based on the foregoing, there is a reasonable possibility that this

9

evidence, alone or when considered with the rest of the file, could change the outcome in this case. Therefore, this case will be reversed and remanded for further proceedings. In light of this conclusion, the Court need not separately address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the newly submitted evidence from Jacksonville Orthopedic Institute, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 15, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record